ABBOTT BRADY ET AL., APPELLEES, V. CENTRAL WESTERN
RAILROAD COMPANY, APPELLANT.

FILED MARCH 24, 1911.    No. 16,371.

Fraudulent Conveyances: PARTIES IN PARI DELICTO. When a conveyance is made between parties equally at fault, for the purpose and upon an agreement to perpetrate a fraud, the courts will not assist either, but will leave them where they have placed themselves. But when they are not *in pari delicto,* and he who is seeking an advantage from the fraudulent conveyance was the moving party who induced the same, the other, if comparatively innocent, will be relieved.

APPEAL from the district court for Phelps county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*T. E. Brady,* for appellant.

*Hamer & Hamer, contra.*

SEDGWICK, J.

This action was brought in the district court for Phelps county to cancel a deed given by these plaintiffs to the defendant Central Western Railroad Company, conveying a quarter section of land in that county. The trial court

entered a decree as prayed, and the defendant has appealed.

The defense is that the deed was fraudulent; that the plaintiffs had before that time leased this farm for a period of three years or five years, with the condition in the lease that if the farm was sold before a certain date named the lease should be canceled; and that this deed in question was made for the purpose on the part of the grantors and grantee to defraud the lessee. The defendant relies upon the principle that, when a conveyance is made and received for the purpose and upon the fraudulent agreement to perpetrate a fraud, the courts will not assist either party, but will leave them as they find them.

It appears that a few days before this conveyance was made a party of men, representing themselves as surveyors for the defendant company, came to these premises and made, or pretended to make, a survey of a line of railroad which was to extend from Holdrege, in Phelps county, to Kearney, in Buffalo county. Soon afterwards one Nelson called at the home of the plaintiffs and represented that he was the general manager of the defendant company, and that the station of the proposed railroad would be located on or near the plaintiffs' land, and that one Norton, who was with Nelson, was there for the purpose of buying lands which would become very valuable on account of the building of the proposed railroad, and by these and other representations, which it is not necessary now to recite, induced these plaintiffs to believe that the price of land in that vicinity would be rapidly advanced, and that farms could immediately be sold at a high price. Mr. Brady testifies that he told Nelson about the outstanding lease, and that Nelson informed them that a paper could be made that would avoid the lease. It is doubtful which party first suggested making such a paper, but it is clear that Mr. Brady was led to believe that his farm could be soon sold at a very high price, and that it would be all right to execute some sort of a paper from which it could be made to appear that the farm had in fact been sold before the time limited in the lease.

This Mr. Nelson undertook to accomplish, and without any suggestions as to what sort of a paper would be executed he appeared at the home of the plaintiffs the next morning, accompanied by a notary public, with the deed in question already drawn, and also a deed from the defendant company to Mr. Brady which Nelson had executed as general manager of the company. The plaintiffs were easily induced to execute the deed in question, upon the representation that they should have the deed of the company which was already executed, and so be entirely secure. It is now conceded that the deed executed by Mr. Nelson as manager of the company was worthless because Mr. Nelson was not authorized to execute it. The deed in question was put upon record, and afterwards when the plaintiffs had learned that fact there was placed upon record the deed executed by Mr. Nelson. No consideration was paid to the plaintiffs for the land, and the defendant relies solely upon the mutual fraud of the plaintiffs and Mr. Nelson in attempting to defraud the lessee in the supposed lease. The lease was not put in evidence, and the evidence in regard to the supposed condition of the lease is very uncertain. The trial court found that the deed in question was procured by the fraud and imposition of Nelson, and we are satisfied that the finding is justifiable. If it could be found from this evidence that there was a valid condition in the supposed lease that would be defeated by the execution of this deed, and that this deed was executed for that purpose on the part of the plaintiffs, and so received by the defendant, and that it was therefore fraudulent on the part of all parties connected with it, still it is apparent that the parties were not *in pari delicto*. The idea of making a deed originated in the mind of Nelson. He evidently saw from the beginning that he might reap an advantage from it and is now attempting to do so.

The judgment of the district court is right, and is

AFFIRMED.